UNITED STATES of America, Appellee,

v.

William A. GOICHMAN, Appellant.

No. 76–1132.

United States Court of Appeals, Third Circuit.

Argued Sept. 9, 1976.

Decided Nov. 22, 1976.

J. Clayton Undercofler, III, Walter S. Batty, Jr., Gilbert J. Scutti, Philadelphia, Pa., for appellee.

Stephen M. Feldman, Francis R. Tunney, Jr., Feldman & Feldman, Philadelphia, Pa., for appellant.

Before VAN DUSEN, HUNTER and WEIS, Circuit Judges.

PER CURIAM:

This is an appeal from a conviction for a willful attempt to evade or defeat payment of income taxes, in violation of 26 U.S.C. § 7201. Defendant, William A. Goichman, argues on appeal that certain documents were improperly admitted at trial and that a remark by the trial judge warrants a retrial. After careful consideration of these and other contentions, and a thorough review of the record, we find no reversible error.

I.

Section 7201 of Title 26 of the United States Code provides

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony

and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution. ▆▆▆ The elements of a § 7201 violation are easily stated: the government must prove the existence of a tax deficiency, an affirmative act constituting an evasion or attempted evasion of the tax due, and willfulness. *Sansome v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *United States v. House,* 524 F.2d 1035, 1038–39 (3d Cir. 1976). To determine the existence of a tax deficiency in this case, the government used the net worth method. Under the net worth method, the government attempts to establish by circumstantial proof the existence of unreported income by selecting an opening year for which it can reasonably ascertain the defendant's net worth and comparing that amount with a closing year's net worth. Any estimated nondeductible living expenses during that period are added to the closing net worth. The opening net worth is subtracted from the closing net worth to gauge the amount of unreported income the defendant must have had. But the government's burden does not rest there, it must then either prove that there is a likely source of the unreported income, *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), or negate all possible nontaxable sources of that income. *United States v. Massei,* 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958).

▆▆▆ Furthermore, when the government bases its case on circumstantial evidence, as it did here, it has the additional burden of investigating any possible sources offered by the defendant as legitimate explanations of the increase in his net worth. This depends entirely on the defendant's offer of relevant leads; the government "is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant." *Holland v. United States, supra,* 348 U.S. at 138, 75 S.Ct. at 137.

Here, the government did establish a likely source of unreported income, the method

by which this defendant conducted his law practice. Moreover, there was extensive evidence negating the existence of any nontaxable sources, and the defendant appears to have suggested no likely leads. In denying defendant's post-trial motions, the district court thoroughly discussed the government's proof in this case. See *United States v. Goichman,* 407 F.Supp. 980 (E.D. Pa.1976). We will briefly discuss three of appellant's claims: the admissibility of evidence concerning checks endorsed to defendant's stockbroker during a pre-prosecution year; the admissibility of a document entitled "History of Children's Assets"; and the court's remark that "[w]hy this case is here is as simple as A B C."

## II.

### A.

The first ground urged for reversal is the admission of evidence relating to 1967, a pre-prosecution year, consisting of five checks Goichman received in settlement of personal injury cases. Goichman maintained two accounts at Philadelphia National Bank: an escrow account, which held the total amounts received in settlement, and an attorney account into which Goichman would then deposit the amount of settlement that represented his fee. His accountant would treat deposits to the attorney account as taxable income; settlement receipts would not be counted as taxable unless and until they were deposited in that attorney account.

The five checks received in settlement in 1967, exhibits G44 to G47B, were not deposited in Goichman's attorney account. Instead they were endorsed to Goichman's stockbroker, Goodbody & Co., for stock purchased by Goichman. Thus it is quite possible that Goichman's accountant did not include the five checks as taxable income in the pre-prosecution year of 1967.

Appellant claims the district court committed reversible error in admitting the 1967 checks because 1) there was no evidence that Goichman had earned any part of the sums represented by the checks, and 2) if there was earned income, there was no

showing that any of it had gone unreported. The district court, however, admitted the evidence "for the limited purpose of showing opportunity or method of generating unreported income," 407 F.Supp. 980, 992 (E.D.Pa.1976), and the jury was instructed accordingly.

■■■■ This circuit has long held that evidence of other crimes or bad acts, despite its inadmissibility to prove the crime in question, is admissible "if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." *United States v. Stirone,* 262 F.2d 571, 576 (3d Cir. 1958), *reversed on other grounds,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). As with any other relevant evidence, the trial court is to weigh its relevance against any prejudice that may occur to the defendant. *See also United States v. Hines,* 470 F.2d 225, 227–28 (3d Cir. 1972). The new Federal Rules of Evidence [1] would not exclude this evidence of other offenses merely because it relates to a pre-prosecution year and was not proven to be an "offense." It was relevant as proof of a likely method of concealing taxable income. Federal Rule 404(b) provides:

> (B) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As the advisory committee notes, the above refers only to the initial admissibility of the

evidence. For the determination of whether the relevance outweighs any prejudice, we are reminded that "[n]o mechanical solution is offered." 28 U.S.C. Rule 404, Advisory Committee Note to Subdivision (b).

■■■■ In this case, Goichman's bypass of his attorney account was relevant to show opportunity or method of generating unreported income. The jury was properly instructed that it could consider those five 1967 checks only for that purpose. We find no abuse of discretion in the trial court's determination that the relevance of those checks was not outweighed by possible prejudice to defendant.

■■■■ We also find no merit in appellant's contention that the government had to prove that the 1967 bypass of the attorney account itself constituted an offense, by showing that the checks represented some income and that the income was never reported. The latter would be a fair statement of the government's burden for the prosecution years, but not for a pre-prosecution year when the evidence is admitted solely to show that defendant *could* generate unreported income, not that he *did* so.[2]

### B.

The second alleged error is also a question of the admissibility of evidence. A document entitled "History of Children's Assets," exhibit G41(A), was admitted for the purpose of showing that various assets of Goichman's children were purchased by Goichman. The document was found in the clerk's office of the Court of Common Pleas in Montgomery County, Pennsylvania, by an IRS agent. There had been a proceed-

---

1. The Federal Rules of Evidence became effective on July 1, 1975; the jury returned its verdict on June 26, 1975, so Federal Rule 404(b) was not controlling. Nonetheless, even in its proposed form, Rule 404(b) was in accord with the rulings of this circuit. *See also* 2 J. Weinstein & M. Berger, Evidence ¶ 404[08] (1975) (Rule 404(b) merely codifies prior federal doctrine concerning evidence of post bad acts).

2. Appellants also argue that the existence of an opportunity or method by which Goichman

could avoid reporting his taxable income "speaks for itself," Brief for Appellant at 43, and that the government was creating a "nonissue" in order to get this evidence in. We find no merit in that argument. On the contrary, evidence concerning a direct endorsement of insurance (settlement) checks was especially relevant here, as the government later introduced evidence that during a prosecution year some $90,000 in bank loans were repaid by checks endorsed by Goichman. The weight of the evidence was properly for the jury.

ing in equity, *William A. Goichman v. Beverly Goichman,* in that court, in which Mr. Goichman claimed to have provided the funds for many of his wife's and children's assets, which he wanted returned to him. Several documents from that proceeding were introduced in the criminal case *sub judice.*

The "History of Children's Assets" is a two-page unsigned document, typewritten except for the title, which is in block printing by hand. Both pages contain the seal and signature of the clerk of the Court of Common Pleas, and a certification that they are "[f]rom original record docket." On the back of the second page is a mark in black felt-tip pen, about one-half inch in height, "D–15." [3]

█ Appellant correctly contends that the certification on the document does not govern its admissibility. It is well-settled that "no certified copy whatever may be used where the original record itself is not admissible under the rules of evidence for the purpose in hand." 5 J. Wigmore, Evidence § 1677, p. 862 (Chadbourn rev. 1974).

Appellant contends the document is inadmissible because the only evidence to connect the document to Goichman was 1) references to "my wife" and "Gail, Jeff, and Daniel" (the first names of Goichman's three children) and 2) the "cryptic symbol, D–15" on the back. For the first point appellant relies on 7 J. Wigmore, Evidence § 2130, at 570 (3d ed. 1940), for the proposition that contents cannot be used until there has first been external evidence to connect the document to the defendant. For the second point, that "D–15" is merely a cryptic symbol, appellant argues that the government produced no evidence to show that the document was even used as an exhibit during the support proceeding.

█ Clearly this document could not be admitted without some proof of its authentication. As Wigmore puts it, "[t]he foundation on which rests the necessity of authentication is not any artificial principle of Evidence, but an *inherent logical necessity.*" *Id.* § 2129, at 564. And, generally, the contents themselves are not capable of providing this authentication unless they happen to reveal certain knowledge that could be true of only one individual, *id.* § 2148 at 606, which is not true here because Goichman's wife would be privy to the same knowledge alleged.

---

3. Because the style and references in the document bear on its admissibility, we reprint the document in its entirety. It reads:

HISTORY OF CHILDREN'S ASSETS

1966

In June, 1966, I purchased three savings certificates at PNB in my name for my three children in the total sum of $15,000.00.

In November, 1966, I purchased two earnings certificates at the PNB in my wife's name for Gail and Jeff in the total sum of $10,000.00.

1967

In January, 1967, I purchased two savings certificates at the 2nd Fed. S&L Assn. in the name of my wife for Gail and Daniel amounting to $15,000.00.

In March, 1967, I purchased a savings certificate at Colonial Fed. S&L in the sum of $10,000.00 in my name or my wife's name for Daniel.

In July 1967, the $15,000.00 in PNB was renewed for another year.

In November, 1967, the other $10,000.00 savings certificates in PNB were closed.

In November 1967, a $16,000 savings at First Fed. S&L Assn. in wife's name for children was opened up. This still remains.

1968

In April, 1968, the $10,000.00 savings certificate at Colonial was closed.

In April, 1968, a $15,000 savings certificate at First Federal S&L Assn. was opened in my name for my children and closed in July, 1968.

In July, 1968, the $15,000.00 in savings certificates at 2nd Fed. S&L were closed.

In July, 1968, the $15,000.00 in savings certificates at PNB were closed.

In July, 1968, $35,000.00 in savings certificates were opened in my wife's name for the three children at West Phila. Fed. S&L Assn. This still remains.

SUMMARY

| | |
|---|---|
| 1966 | $25,000.00 PNB |
| 1967 | $15,000.00 2nd Federal |
| | $10,000.00 Colonial |
| | $16,000.00 First Fed. S&L remains |
| 1968 | The $50,000.00 at PNB, 2nd Fed. & Colonial were closed. |
| | $35,000.00 was opened at West Phila. Fed. S&L—remains. |

Mutual Funds—They all remain

| | | |
|---|---|---|
| Oppenheimer | 9-29-67 | $ 5,000.00 |
| Invest | 9-29-67 | $ 5,000.00 |
| Revere | 10-31-67 | $10,000.00 |
| Revere | 5-31-68 | $10,000.00 |

■ What appellant overlooks is that the showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic, *United States v. Natale,* 526 F.2d 1160, 1173 (2d Cir. 1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); *United States v. King,* 472 F.2d 1, 7 (9th Cir.), *cert. denied sub nom. Arias v. United States,* 414 U.S. 864, 94 S.Ct. 174, 38 L.Ed.2d 84 (1973); *United States v. Addonizio,* 451 F.2d 49, 69 (3d Cir.), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); *United States v. Tellier,* 255 F.2d 441, 448 (2d Cir. 1958); 5 J. Wigmore, Evidence § 2135 (3d ed. 1940). *See also* Fed.R.Ev. 901(a) (not in effect at time of trial).

■ Here there was sufficient evidence to let the jury consider the relevance and weight of the document. It was certified as being part of the docket record in the prior Montgomery County support proceeding; it referred to children having the same first names as did Goichman's; the contents are corroborated (as pertaining to Goichman) by Goichman's complaint in that Montgomery County proceeding, exhibit 639, which was correctly attributed to appellant, and by bank statements as well. *See United States v. Sutton,* 138 U.S.App. D.C. 208, 426 F.2d 1202 (1969); *McFarland v. McFarland,* 176 Pa.Super. 342, 107 A.2d 615 (1954). In sum, the document was supported by a prima facie showing of authenticity.

■ Moreover, even if it had been error to admit G41A, that error would have been harmless, as the government had other evidence pertaining to the source of Goichman's children's assets, such as his complaint in the above county proceeding.

## C.

■ The third, and final, alleged error we discuss is appellant's claim that the trial judge improperly expressed an opinion as to Goichman's guilt, within the hearing of the jury. The remark occurred while defense counsel was conducting cross-examination of an IRS employee, asking the witness how the regional office decides which tax evasion cases to select for criminal prosecution. The trial judge remarked "It's as simple as A B C in this case. Why this case is here is as simple as A B C." Defense counsel did object to the remark at that time, but did not request cautionary instructions to the effect that the jury was to disregard any such comments the trial judge may have made during the course of the trial.

In examining whether a particular remark by the trial judge warrants reversal and a new trial, we must consider the remark in its complete context and ask what effect it may have had on the jury. Here we are dealing with a single remark, directed somewhat impatiently at defense counsel or at the IRS witness. The matter being discussed on cross-examination was the selection procedure used by the regional IRS office in determining in which of the delinquent tax cases it should proceed criminally, instead of civilly. In a general sense, this is an examination of the perennial issue of prosecutorial discretion: how the appropriate official decides whom among a group of offenders to single out for prosecution. Here the defense counsel may have hoped to elicit from the IRS witness an arbitrary selection procedure, which may have elicited sympathy from the jury. Instead the judge interjected that he, at least, knew why this case had been selected. Our inquiry is limited to what the jury may have thought the judge knew. We would grant a new trial only if we decided that the jury would have interpreted this remark to mean that the judge thought the defendant was guilty, even though the remark stated

only that the judge understood why this case had been selected.

In *United States v. Williams,* 530 F.2d 1157 (5th Cir. 1976), the court considered a remark by the trial judge who examined relevant fingerprint evidence in an armed robbery case and commented that he was "satisfied." This sort of comment is quite similar to the one *sub judice* in that it could mean that the fingerprint evidence satisfied the judge on the issue of defendant's culpability, or, on the other hand, it could mean simply that the judge was satisfied with the quality of the fingerprints, or the argument for their introduction. The Fifth Circuit held that: "Viewing the record in its entirety, the prejudicial effect of the comment, if any, appears negligible and, in light of the evidence, could not have affected the jury's verdict." *Id.* at 1158. *See also United States v. Lord,* 475 F.2d 763 (9th Cir. 1973), *cert. denied,* 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974) (upholding narcotics conviction when judge remarked that he found defendant's entrapment "story" incredible and did not believe it).

While we need not express approval of the trial judge's remark in this case, judging its effect from a careful consideration of the entire record we find no reversible error.

### III.

We have examined appellant's other contentions and find them without merit. For the foregoing reasons, the judgment of the district court will be affirmed.