**Barry SIMMONS, Plaintiff-Appellant,**

**and**

**American Mutual Liability Insurance Company, Intervenor-Appellant,**

**v.**

**HOEGH LINES, Defendant-Appellee.**

**No. 84–3791.**

United States Court of Appeals, Fifth Circuit.

March 14, 1986.

Hailey, McNamara, Hall, Larmann & Papale, Michael J. Vondenstein, Metairie, La., for American Mut. Liability.

Walter Z. Steinman, Philadelphia, Pa., for Simmons.

Terriberry, Carroll, Yancey & Farrell, Wm. E. Wright, Jean Melancon, New Orleans, La., for defendant-appellee.

Before GOLDBERG, HILL, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

On June 1, 1982, plaintiff Barry Simmons was employed by the Strachan Shipping Company as a longshoreman. While assisting in the unloading of the vessel M/V HOEGH PILOT, Simmons was injured when an unsecured escape hatch cover fell on the back of his head. Strachan's compensation carrier, American Mutual Liability Insurance Company, paid, and continues to pay, compensation and medical payments to Simmons under the Longshoremen's and Harbor Worker's Compensation Act.

Simmons brought a third-party claim to recover damages from the vessel's owner, Hoegh Lines. American Mutual intervened to recover from Hoegh the benefits it had paid to Simmons in the event Simmons prevailed at trial. After a jury trial, the trial court entered a judgment on the verdict in favor of the defendant. Simmons and American Mutual appeal on three grounds: (1) the trial judge erred in allowing the jury to read a stipulation mentioning collateral benefits, (2) the trial judge erred in admitting unsigned, unfiled answers to interrogatories from a previous case involving Simmons and (3) the trial judge abused his discretion in refusing to excuse a juror who admitted knowing defendant's expert. We reverse and remand for a new trial.

## DISCUSSION

### Mention of Collateral Source Benefits

As a longshoreman Simmons received compensation and medical benefits from his employer's compensation carrier after his injury. American Mutual, the compensation carrier, was entitled to recoup the benefits it paid Simmons from any judgment Simmons received against Hoegh. When Simmons sued Hoegh, American Mutual intervened to assert its right to all or part of any judgment against Hoegh. Since there was no objection to the intervention and no dispute about the amount of benefits paid, the parties agreed that American Mutual's intervention would be handled by stipulation. A written stipulation was prepared stating the amount of the compensation and medical payments Simmons had received from American Mutual. At the beginning of the trial the stipulation was submitted as an exhibit and, after a discussion among the parties, the trial judge ruled that the stipulation should not be presented to the jury.

During the trial Simmons requested that the jury be told that he had incurred $12,196 in medical expenses in order to prove this element of special damages. Rather than testify or otherwise prove all the various medical expenses he had incurred, Simmons sought simply to introduce the portion of the stipulation relating to the amount of his medical expenses. At this point the district judge, over Simmons' objection, decided to let the entire stipulation go to the jury. The stipulation revealed that Simmons had received, and was continuing to receive, compensation benefits at the rate of $124 per week; the stipulation also revealed that all of his past and future

medical expenses were being paid by American Mutual.

■ The district judge, in ruling that the stipulation should go to the jury, stated: "I think that [the stipulation] should go to the jury, because I don't think the jury should go in the deliberation room thinking this man has received absolutely nothing since June of 1982. It might produce a prejudice to the defendant." The judge further stated: "I am going to let them have the whole stipulation, because I think that the jury needs to know the man hasn't been there since June 1982 without getting any benefits of any kind." A few minutes later the court attempted to explain to the jury the introduction of the stipulation:

Ladies and Gentlemen, this stipulation is on the intervention. You have the plaintiff in the case, Mr. Simmons, and you have the defendant, Hoegh Lines, and you have the intervention of American Mutual Insurance Company, which carries the insurance for Strachan Stevedoring Company that Mr. Barry Simmons worked for. And this stipulation, rather than having somebody from American Mutual come up here and testify as to how much they have paid in medical benefits and weekly benefits since the date of the accident in June of 1982, this stipulation simply shows the amount that American Mutual has paid during that time in weekly benefits and in medical benefits.

The court also addressed the stipulation immediately preceding the charge to the jury:

Ladies and Gentlemen, I am ready to give you your final jury instructions, but I just wanted to make one comment on this stipulation. This will go to the deliberation room with you. This was a stipulation signed on behalf of Barry Simmons and on behalf of Hoegh Lines and also on behalf of American Mutual Insurance Company. And the reason I think I need to comment on it, it says here, there are two amounts here, one is for the weekly benefit that American Mutual has been paying since June 1st, 1982, and

the other is for the medical expenses that they have paid since June 1st, 1982, but there is a word here that American Mutual continues to pay Barry Simmons the rate of compensation at so much a week, and I think I need to tell you, this trial here doesn't decide what is going to happen one way or the other after this trial is over.

In other words, the wording of this is it just leaves the matter simply between American Mutual Insurance Company, which is the insurance company that had the workmen's compensation policy on the Stevedore. In other words, American Mutual is not concerned with Hoegh Lines. American Mutual issued a policy to the Stevedore Strachan Shipping Company and as a result of the accident, they have been paying this. But the reason I am mentioning this comment is this case does not decide one way or the other as to what American Mutual and Barry Simmons will do after this trial is over. That's a matter that's not before the court.

Simmons argues that the court's admission of the stipulation, the court's failure to give a curative instruction concerning the stipulation, and the court's confusing and misleading instruction before the charge constitute reversible error. We agree.

The law is clear that the jury is not to be told about any collateral benefits a personal injury plaintiff may be receiving. *Eichel v. New York Central R. Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307, 309 (1963) (per curiam) ("In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than receipt of a disability pension."); *Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 354 (5th Cir.1980). Since the jury is ordinarily not to be informed of such collateral benefits, the issue presented here is whether it is permissible to send the entire stipulation to the jury in order to advise them of

figures contained in it and, if that was error, whether the trial judge's instruction cured the error.

■ We conclude that revelation of the medical expenses portion of the stipulation to the jury does not make the recitation of the rest of the stipulation proper. The courts have been hesitant to allow admission of the receipt of compensation benefits even to prove matters other than liability or damages. *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963) (holding inadmissible the receipt of compensation benefits to prove party was a longshoreman and not a seaman); *Bourque* at 623 F.2d 354. However, in *Savoie v. Otto Candies, Inc.*, 692 F.2d 363 (5th Cir. 1982), an exception was found to *Tipton.* If there is little likelihood of prejudice and no strong potential for improper use, and a careful qualifying jury instruction is given, then receipt of compensation benefits may be admissible for the limited purpose of proving another matter. *See also Franklin v. Sandersville R.R. Co.*, 445 F.2d 270 (5th Cir.1971). Here, there was no reason to admit the fact that Simmons was receiving compensation benefits, and good reason to suspect it would be prejudicial. The trial judge's comments suggest that the contents of the stipulation were admitted for the very reason that admission of collateral benefits is prohibited: juries will be more likely to find no liability when they are aware that the plaintiff has already received compensation. The prejudicial effect of compensation evidence affects the liability determination as well as the damages determination. *Tipton*, 375 U.S. at 37, 84 S.Ct. at 3, 11 L.Ed.2d at 6. The trial judge's erroneous admission of the entire stipulation therefore requires reversal un-

less a sufficient curative instruction was given. *Riddle v. Exxon Trans. Co.*, 563 F.2d 1103, 1107–09 (4th Cir.1977).

The trial judge's "instruction" on compensation benefits did not clearly instruct the jury that it was not to consider Simmons' receipt of benefits. The instruction could even be taken to imply (erroneously) that Simmons would continue to receive benefits no matter what size verdict he received. Such a statement prejudiced Simmons because it could have led the jury to believe that he is seeking a double recovery. The trial judge's instruction did not cure the error.[1]

*Admission of Interrogatory Answers*

■ Hoegh Lines' counsel had previously represented another defendant in a case brought by Simmons, and possessed a set of answers to interrogatories allegedly filed on his behalf therein. The answers to 62 multipart interrogatories were not signed or verified by Simmons or an attorney and bore no court file stamp. When asked about the interrogatories and answers at trial, Simmons could not identify them apart from some general information concerning his name and address. Simmons' counsel objected to use of the answers, and the court ruled that they could not be used unless a proper foundation had been laid. The court suggested that defendant's counsel obtain the answers actually filed with the district clerk in the earlier case.[2]

Later in the trial Hoegh Lines again offered the same exhibits, and the district court admitted the documents. Defendant's counsel read several of the questions and answers to the jury, and the questions and answers were sent to the jury room

---

1. The preferred form of jury instruction appears in 3 Devitt and Blackmar, Federal Jury Practice and Instructions § 96.45 at 370 (West 1977) as follows: "Neither the fact that payments have been made to the Plaintiff under the Act, nor the amount of the payments, is to be considered in any way, in determining any issue as to fault or blame or liability or damage in this case."

2. Counsel for defendant attempted to interrogate Simmons about the subject matter of the interrogatories, but the court prevented him

from pursuing that line of questioning. Even if defense counsel would not have been able to use unauthenticated interrogatory answers as a vehicle for impeachment by prior inconsistent statements or admissions of a party opponent, Fed.R.Evid. 801(d)(1) and (2), he should have been able to test Simmons's own recollection of admissible matters like prior injuries and claims, which appeared in the alleged interrogatory answers.

when deliberations began. Simmons argues that the answers were erroneously admitted and that some of the material contained in them was inadmissible.

Federal Rule of Evidence 901 requires that evidence be authenticated or identified "by evidence sufficient to support a finding that the matter in question is what its proponent claims." In this case there was no testimony showing that the answers were those of Simmons; he said he only saw his attorney two times in that prior case. The purported answers were unsigned by his attorney, unverified as Fed. R.Civ.P. 33(a) requires, and as no court file stamp appeared, could not have been shown to be accurate copies of official records. Their admission therefore was error. In some cases the error may be harmless and not require reversal. 28 U.S.C. § 2111. In this case, however, the error was prejudicial because the answers showed that Simmons had previously sued and had received worker's compensation for several similar injuries, suggesting that he is prone to litigation and hence to pressing meritless claims. Moreover, during its deliberations, the jury inquired about the amount of compensation Simmons had received in one of the prior claims revealed by the interrogatories, indicating either confusion or prejudice on their part.

Appellee relies on *United States v. Goichman*, 547 F.2d 778 (3rd Cir.1976), for the proposition that authenticity of a document is a jury question. That is so, however, only if there is first enough evidence to provide a prima facie showing of authenticity. In *Goichman*, for example, prima facie evidence of authenticity existed because, though unsigned, the document listing assets conveyed by a husband to his children was certified as part of the docket record of a prior case and was authored in the first-person by the husband; its contents were corroborated by other evidence at trial. There is no comparable evidence in the record before us to support a prima facie showing of the authenticity of Simmons' alleged interrogatory answers. *See also United States v. Jardina*, 747 F.2d 945, 951 (5th Cir.1984) (quoting *Goichman*,

and noting further that Advisory Committee note to Fed.R.Evid. 901 states that the same procedures governing relevancy conditional on a fact apply as set forth in Fed.R.Evid. 104) cert. denied, —— U.S. ——, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985).

Because reversal is mandated on the above grounds, we do not reach the third issue raised by appellant concerning failure to excuse a possibly biased juror.

The trial court's erroneous admission of prejudicial and prohibited matters requires that the case be REVERSED AND REMANDED for a new trial.