Clarence D. TIPTON, Appellant,

v.

SOCONY MOBIL OIL COMPANY, Inc., Appellee.

No. 19999.

United States Court of Appeals Fifth Circuit.

March 21, 1963.

Rehearing Denied May 10, 1963.

Richard Henderson, Guittard & Henderson, Victoria, Tex., Clyde W. Woody, Houston, Tex., for appellant.

George B. Matthews, New Orleans, La., William H. Tabb, Dallas, Tex., James C. Watson, Keys, Russell, Keys & Watson, Corpus Christi, Lemle & Kelleher, New Orleans, La., of counsel, for appellee.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

JOSEPH C. HUTCHESON, Jr., Circuit Judge.

Appellant brought this action under the Jones Act.[1] Employed by appellee as a roughneck on its drilling crew, appellant was assigned to an offshore fixed platform which was tended by Drilling Barge No. 1, concededly a "vessel". Although appellant performed his principal duties on the fixed platform, as a roughneck, he did occasionally perform various duties aboard the barge and was injured while doing such seaman's work.

The controlling fact issue before the trial court was whether the appellant was a seaman or crew member, and hence within the coverage of the Act, or a drilling employee. In response to an interrogatory,[2] the jury found that appellant was not a member of the crew of Drilling Barge No. 1.

Appellant first complains that he was prejudiced by the comment of the court to the jury that "the evidence is overwhelmingly to the effect that he was

1. 46 U.S.C. § 688.

2. "Was the employment of the plaintiff, Clarence D. Tipton, by the defendant, Socony Mobil Oil Company, Inc., such as to constitute him a seaman, or a member of the crew of Drilling Barge No. 1?"

a drilling employee". The statement, taken in context,[3] does not transcend the undeniable right of the court to comment on the evidence and does not constitute error.

■■ In connection with the interrogatory as to whether the appellant was a seaman, the court charged: "To constitute one a member of the crew of a vessel, it is necessary that he be permanently assigned to the vessel, or that he perform a substantial part of his work on such vessel, and that his duties contributed to the mission or function of the vessel". Appellant contends that that charge was erroneous, and that the court should have charged, as requested by appellant, that: "The fact that he [appellant] has other duties to perform off the vessel, or on other vessels, or that his principal duties are elsewhere, does not in itself prevent coverage under the Jones Act". In our opinion, the charge given was correct, and the court properly refused the requested charge.[4]

■ Finally, appellant complains of the overruling of his motion to instruct appellee not to refer to, or introduce into evidence, the fact that appellant had received payments under the Longshore-

men's and Harbor Workers' Compensation Act. Appellee argues that the motion was properly overruled because the fact that appellant received such payments went to show that appellant considered himself a drilling employee rather than a seaman; therefore, the fact that appellant received such payments was relevant to the issue of his status. We do not agree. Regardless of what the appellant, at any particular time, thought was his status, the issue of status depended upon objective facts. Appellant's beliefs, being wholly subjective, in no way affected the issue of status and hence was irrelevant. However, in view of the fact that the jury, having decided the question of status adversely to appellant, never reached the issue of damages, we believe that the error did not prejudice appellant and was harmless.

No reversible error appearing, the judgment should be, and it hereby is

Affirmed.

JOHN R. BROWN, Circuit Judge (dissenting).

I am in agreement with the Court's opinion and an affirmance of the case

---

3. The trial judge initially told the jury:
   "Now, in this court, I should tell you, too, that the judge is permitted, if he sees fit to do so, to comment upon the evidence. By that I mean that I am permitted to discuss the evidence with you, to tell you what I think about the evidence, or which witnesses I think are credible or not. * * * I do expect to discuss the facts with you to some extent; but what I want you to understand is that anything I say to you about the facts of the case, any comment I make about the evidence, is intended on my part to be of some help to you in your consideration of the case. It is not intended by me to direct or tell you what your findings should be; and anything I say about the witnesses or about the evidence is not binding, and you are at perfect liberty to disregard it."
   The statement of which complaint is made is in the following paragraph:
   "I think, in my own judgment—and I might say to you that this is a comment on the evidence which is in no sense binding upon you—I think the evidence is

overwhelmingly to the effect that he was a drilling employee. He was an employee engaged in drilling for, developing and producing natural resources. But his counsel argues, with much force, that he performed other duties on the drilling barge. They emphasize the fact that he spent considerable time mixing mud on the drilling barge, although the mud, of course, was to be used in the drilling operation. They point to the fact that sometimes the drilling crew, in the event of emergency or shorthandedness on the part of the barge's crew, the deckhands, would pitch in and help with some of the deckhands' work, just as the deckhands sometimes apparently would pitch in and help with some of the drilling crew's work."

4. Offshore Co. v. Robison, 5th Cir., 1959, 266 F.2d 769, 75 A.L.R.2d 1296. Gianfala v. Texas Co., 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775, revising Texas Co. v. Gianfala, 5th Cir., 1955, 222 F.2d 382, does not lend any support to appellant's position in this regard.

except as to the error in admission of evidence as to the Longshoremen's and Harbor Workers' Compensation Act. I think this error requires a reversal.[1] We are all agreed that the evidence as to compensation payments and benefits received by the plaintiff was not admissible and that it was error to admit it. Our point of difference concerns the consequences of that error.

The problem is the difficult one of determining whether under the policies reflected by F.R.Civ.P. 61 and the parallel statute [2] the error was harmful. This taxes to the utmost the whole deliberative process. There is no easy solution. The Supreme Court has occasionally cast it in terms of a reversal unless the nonprejudicial effect "affirmatively appears." [3] But as so frequent to verbalize the principle in that form is really to state the problem, not provide a method for solution. If, in the words of the Supreme Court, "substantial rights" are affected, obviously the error cannot be discounted as harmless.[4] The problem begins and ends in judgment. See Kotteakos v. United States, 1946, 328 U.S.

750, 66 S.Ct. 1239, 90 L.Ed. 1557; Ahlstedt v. United States, 5 Cir., 1963, 315 F.2d 62. Illustrating some of the difficulties inherent in forming the judgment is the fact that neither the *existence* nor the *absence* of harm can ordinarily be demonstrated.[5] It comes down, then, to a question of *likelihood*.[5A] I believe all would agree that if there is a substantial likelihood of harmful consequence, then reversal is required.

I think several factors weigh heavily toward the likelihood of harm here. Most significant was the preoccupation with this problem of the Longshoremen's Act throughout the whole trial. It began in the defendant counsel's opening statement. He there urged as the defendant's first position, "That Mr. Tipton was an oil field worker, he was injured in connection with an industrial oil field accident, and he has a remedy under a federal compensation act, and in fact received benefits in the form of weekly payments under that act * * *." Taking no chances with a faulty recollection he declared at the conclusion of his opening statement to the jury, "Third, lastly,

---

1. Were a new trial ordered, I would consider it appropriate that the trial Court in the instruction as to status of a seaman use suitable language to avoid the restrictive emphasis to *a* vessel or substantial duty performed on "such vessel." The instruction given (quoted in the Court's opinion) was a substantial paraphrase of the Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, 75 A.L.R.2d 1296, 1959 A.M.C. 2049. That case dealt with a single vessel. Since that time we have recognized that a person may have a seaman's status with respect to several identifiable vessels of a fleet. Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523.

2. 28 U.S.C.A. § 2111.

3. "* * * an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it *affirmatively* appears from the whole record that it was not prejudicial." McCandless v. United States, 1936, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205 and Bihn v. United States, 1946, 328 U.S. 633, 66 S. Ct. 1172, 90 L.Ed. 1484.

4. See 7 Moore, Federal Practice #61.02, pp. 1004, 1005 (2nd ed. 1955).

5. Post-trial cross examination of jurors to ascertain what went on in the jury deliberation is severely limited in Federal Courts. This policy was reinforced by instantaneous congressional disapproval of experiments aimed at finding out how the jury functions. See 18 U.S.C.A. § 1508, Act of Aug. 2, 1956, c. 879, § 1, 70 Stat. 935.

5A. "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos v. United States, 1946, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557.

it is our position—and this is basically the same as I said to you at the outset—that the proper remedy, the proper legal remedy that Mr. Tipton has, is not a suit for damages under the Jones Act, but a claim for compensation benefits under the federal act known as the Longshoremen's and Harborworkers' Act, which is made applicable to this type of situation by the so-called Outer Continental Shelf Act * * * and that he has a claim for compensation benefits and has in fact been paid compensation benefits and medical services under that Act."

Almost immediately thereafter the Court at the instance of plaintiff's counsel ruled that reference to claim for, or payment of, compensation benefits under the Longshoremen's Act would not be permitted in the examination of witnesses.[6] But by the time of the first noon recess of the opening day of the trial, the Judge relented. Over objection of the plaintiff's counsel, he ruled that the defendant was entitled to examine on this point "to show that he [plaintiff] has taken an inconsistent position to the one he is taking here." Because the Longshoremen's Act expressly excludes members of the crew of a vessel (33 U.S.C.A. § 902(3)), the Judge presumably reasoned that this showed that the plaintiff had purposefully "sought and received compensation on the theory that he was not a member of the crew." The Judge summarized it this way: "What this is, actually, is proof of the fact that he assumed that inconsistent position * * *.''

Adhering to this changed ruling, the Court over plaintiff's objection permitted the defendant in cross examination of the plaintiff to go into this matter thoroughly. The plaintiff's oral testimony and two identified "workmen's compensation receipts" formally offered as exhibits 3 and 4 showed that the plaintiff had received the sum of $508.16 for the first period of disability plus the further sum of $918 for a later one. In the presence of the jury, defendant's

counsel in the colloquy justifying the questions stated that "The purpose" of the offer was, number "three, to show that the witness received, accepted, and retained compensation benefits paid to him under the provisions of the United States Longshoremen's and Harborworkers' Act."

Again, the defendant took no chances with a faulty memory of the jury. Extracting the persuasiveness of this evidence—good to the last drop—defendant's experienced and able counsel, countering the jury argument of plaintiff's counsel that the defendant had been almost cynically indifferent to the plight of this injured long-time employee, set the tone of his whole argument to the jury in this way. This "is not a matter of laughter, it is nothing to sneer at, and it is nothing to belittle, as [plaintiff's counsel] would suggest we did * * *. Our sympathy is with Mr. Tipton to the extent that he sustained an accident. But recall that Mr. Tipton is not without a legal remedy. He was paid, as the evidence shows, compensation benefits under the Longshoremen's and Harborworkers' Act, and he was offered further benefits. * * *." Pressing on, defendant's counsel drove this home in dollars and cents. " * * * Mr. Tipton was paid approximately $1400 in compensation benefits, which he accepted, and which he retained. * * * He is not without a right [since] * * * we admitted he was covered under the [Longshoremen's] Act. * * * He is not without a remedy; but the lure of a big damage suit, the possibility of being a seaman, looms on the horizon." More of this was repeated. During the closing arguments of plaintiff's counsel, several objections were made by defendant's counsel in terms again emphasizing that the plaintiff's remedy was under the Longshoremen's Act.

And then to cap it all off the Judge got in the act. To indicate to the jury that all of this permitted reference to the

---

6. Though a little tardy, this followed the preferred practice of a motion and order in limine. See Davis, The Collateral

Longshoremen's Act was a vital part of the case to be resolved by them and not just merely a casual excursion into psychologically persuasive evidential details, the Court in its charge to the jury dwelt at great length on the Longshoremen's Act. After six pages of preliminary instructions and definitions, the Court spent six pages of his oral charge on this matter. The Judge first carefully outlined the Longshoremen's Act, the remedy provided by it, and the fact that an injured worker was entitled to those benefits without regard to fault. Next he contrasted this with the Jones Act as one affording recovery for negligence or unseaworthiness. Likewise he contrasted the unlimited nature of the damages under the Jones Act to those under the Longshoremen's Act which "provides a certain recovery, a certainty of recovery but limited in amount * * *." After three pages of this, the Court then proceeded into a discussion of the physical operations for oil exploration in the Gulf of Mexico and the enactment by Congress of the Outer Continental Shelf Lands Act. 43 U.S.C.A. §§ 1331–1343. After stating that the plaintiff's injuries occurred in offshore oil operations at a place within the Outer Continental Shelf, the Judge then quoted from the Outer Continental Shelf Act to advise the jury that "with regard to disability or death of an employee from an injury which occurs from the operation or exploration for oil and gas on the Outer Continental Shelf * * *," that Act provides that "compensation shall be payable under the provisions of the Longshoremen and Harbor Workers' Compensation Act." Reducing these to the factual situation of the case,[7] the Judge went on, "When he [plaintiff] was injured, what happened? His company * * * apparently considering that he was an em-

ployee engaged in the drilling of wells, paid him the benefits provided under the Longshoremen's * * * Act. * * * Those payments were received by Mr. Tipton and retained. * * *." "Mr. Tipton says, 'I wasn't an employee engaged in the drilling or exploration for natural resources, though I took the compensation which I received as such, but I am in fact a member of the crew,' and hence he seeks the larger recovery * * *."

After hearing objections of counsel to the charge, the Court issued supplemental instructions which left this matter ringing in the ears of the jury as they retired. The Judge stated to the jury that an objection of counsel complained that the Court's "earlier charge to you that the fact that Mr. Tipton had accepted these benefits under the Longshoremen * * *" perhaps suggested that the " * * * Act precluded him as a matter of law from maintaining this suit on the theory that he was a seaman." To clarify this, the Court then stated: "That, of course, is not the case. The suit is before you for decision, and in the event in truth and in fact he was a seaman all the while, he would be entitled to a seaman's remedy, even though he had accepted the compensation benefits heretofore."

But this is nowhere near the end of the tale. The jury retired to deliberate. Inquiry revealed that agreement had not yet been reached so the jury was excused about 6:30 p. m. to return the following morning. After resuming deliberations in the morning, the jury sent the Judge an inquiring note which read:

"If we find Mr. Tipton is not a seaman or a member of the crew of drilling barge No. 1, does he have recourse for compensation under the

7. The Court's comments were here directed to special interrogatory No. 1 (F.R.Civ. P. 49):
"Was the employment of the plaintiff * * * by the defendant * * * such as to constitute him a seaman or a member of the crew of the drilling barge No. 1."

The jury was expressly instructed not to answer the succeeding 7 issues inquiring as to negligence, unseaworthiness, damages, etc. if they found plaintiff not to be a seaman.

Outer Continental Shelf or other act?"

To this the Court made instant handwritten response: [8]

"This is not a matter for the jury's consideration. You should consider only the questions submitted and the evidence thereon."

Thus it was literally that the trial opened and closed with the major theme. Recurring again and again "like a haunting melody" was this opening refrain: the plaintiff is subject to the Longshoremen's Act and is entitled to receive compensation benefits thereunder.

This was formally asserted as a defense, as such. In his initial and extended charge to the jury, it was treated extensively by the Court as relevant to the case. And as demonstrated by their inquiry note, it was thought to be relevant by the jury. At that stage it was then way too late for the Judge to erase all that had gone. There was then no way to eradicate all that the jury had heard both from counsel and from the Judge.

It is perfectly plain to me that in trying to fashion their answer to issue No. 1 (note 7, supra), the jury did not wish to take any action which would cut the plaintiff off from further benefits. Granted that this was entirely irrelevant to the issues for their decision, their note of inquiry shows what was in their mind. And the trial Court had to take the full blame for it being there. For it was the trial Judge who changed his

earlier ruling to let it in. It was the trial Judge who permitted extensive cross examination on this matter over objection of the plaintiff. It was the trial Judge who explained fully how the Longshoremen's Act worked and what it provided. If, as now argued, it was immaterial to the case, it ought never to have been there. But it was and it could not be removed by a simple statement.[9]

In light of this preoccupation with this problem, I think it takes more than the simple statement in the majority's opinion that " * * * the error did not prejudice appellant and was harmless." With no further illumination this results from " * * * the fact that the jury * * * having decided the question of status adversely to appellant, never reached the issue of damages." But of all the things that are clear is the fact that this evidence was neither offered nor admitted to prove payment in mitigation of damages. Moreover, in the sequence reflected by the Judge inquiry note and the fact that only Issue No. 1 was answered, it is certain that jury consideration of this evidence was confined to the status question, not that of damages.

The Court's clear holding (in which I join) that such testimony is inadmissible [10] serves as a warning that if this occurs in future cases, the judgments cannot stand. More important, it serves to guide careful trial Judges from allowing this extraneous, but inflammatory, matter to enter the case. Thus the only per-

---

8. Counsel were not advised of the receipt of the inquiry or the Court's response until after the verdict was received and the jury discharged. Complaint is made of the legal sufficiency of this answer. For my purposes, I can assume that this procedure was permissible and the answer technically correct.

9. Indeed, in this casual effort to expunge it all, the trial Judge was most inaccurate in admonishing the jury that "you should consider only the questions submitted * * *." I would assume that by reference to "questions submitted," he is there talking about his charge. I am sure the jury treated it thus. It was the

trial Judge who at great length had discussed the Longshoremen's Act and its significance for an oil field worker injured in the geographical area of the Outer Continental Shelf.

10. Evidence of payments received by an injured party from a collateral source should ordinarily be excluded, see A. H. Bull Steamship Co. v. Ligon, 5 Cir., 1960, 285 F.2d 936, 937, or use carefully confined. Cf. Page v. St. Louis Southwestern Ry., 5 Cir., 1962, 312 F.2d 84; Simmons v. Union Terminal Co., 5 Cir., 1961, 290 F.2d 453, 454; Davis, The Collateral Source Rule, Tex.Bar J., Vol. 26, January 1963, p. 31.

son who will ever run the risk of harm is Tipton, this plaintiff.

It is difficult for me to see—or for me to understand how Judges can say—that the sole victim suffered no harm.[11]

I therefore respectfully dissent.

11. As it is certain that this careful trial Judge made all of his rulings in the genuine belief that the evidence (and comment) was admissible, the minimum now required would be to send the case back for the Judge to evaluate the motion for new trial in the light of our categorical disapproval of his basic ruling.