Danny BOURQUE, Plaintiff-Appellant,

v.

DIAMOND M. DRILLING COMPANY et al., Defendants-Appellees.

No. 78–3350
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1980.

---

* F.R.App.Proc. 34(a), 5th Cir. Local Rule 18.

Jarrell E. Godfrey, Jr., New Orleans, La., for plaintiff-appellant.

Christopher B. Siegrist, Houma, La., for defendants-appellees.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

JAMES C. HILL, Circuit Judge.

Appellant brought this suit under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law, seeking to recover damages from his former employer, Diamond M. Drilling Co., for injuries to his ankle, knee and leg. The injuries are alleged to have occurred while appellant was working as a roughneck on a drilling rig owned and operated by Diamond M. While attempting to connect two drilling pipes, appellant was struck on the right ankle by a slip, a mechanism used to hold one pipe in place while another is being attached. Appellant was treated at a local hospital for a bruised ankle and released. A few weeks later, appellant left Diamond M and went to work for J & L Engineering Co. Shortly thereafter, while working for J & L, appellant stooped down and felt his right knee pop. The next day, while at home, appellant got up from his chair to adjust his television and the knee locked in place. Surgery revealed three problems in the knee area: chondromalacia, a tear of the medial meniscus, and osteoarthritic changes.

At trial, appellant attempted to prove that when he was struck on the ankle by the slip the force of the blow caused his knee to twist. Some of his knee problems were alleged to be a direct result of the blow. It also was alleged that the accident aggravated a condition in the knee that had begun to develop after appellant was struck by a two-by-four 7 years earlier. Diamond M's defense was that appellant's knee problems all were attributable to the stooping incident at J & L and the incident involving the two-by-four.

At the close of the evidence the case was submitted to the jury on special interrogatories in accordance with Fed.R.Civ.P. 49(a). The verdict was as follows:

1. Was there any negligence on the part of Diamond M Drilling Co. which played any part in bringing about plaintiff's injuries?

 Yes __X__ No _____

2. Was there any unseaworthiness of Diamond M. Drilling Rig 29 which was a proximate cause of plaintiff's injuries?

 Yes __X__ No _____

 If your answers to both of the above questions are "No" immediately date and sign this form without answering further questions and return to the courtroom. If your answer to either or both of the above questions is "Yes" continue on to the next question.

3. Was there any negligence of the plaintiff which was a proximate cause of his injuries?

 Yes __X__ No _____

 If your answer to question three is "No" go on to question five, skipping question four. If your answer to question three is "Yes" go on to question four.

4. By what percentage did the plaintiff's negligence contribute to his injury?

 __80%__

5. What amount of damages, if any, expressed in dollars and including interest if any, did the plaintiff sustain?

 $ _000_____ none

Record, Vol. II, at 301–02.

Appealing from the denial of his motion for a new trial, appellant's primary contention is that the jury's answers to the special interrogatories are so inconsistent that a new trial is required. We agree.

■ The right to a jury trial guaranteed by the Seventh Amendment requires us "to reconcile apparently conflicting answers if at all possible and thus validate the verdict." *Guidry v. Kem*, 598 F.2d 402, 406 (5th Cir. 1979). If, after careful consideration, the answers cannot be reconciled, a new trial must be ordered. *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978).

■ Here, the jury found that Diamond M's negligence and the unseaworthiness of the rig both contributed to appellant's injuries. Although appellant's own negligence contributed only 80% to his injuries, no damages were found to have been sustained and none were awarded. Diamond M contends that the jury must have found no connection between the accident and appellant's knee problems, and that appellant suffered no damages as a result of the ankle injury. Even if we were to accept the first part of Diamond M's explanation and, in effect, rewrite interrogatories 1 and 2 to read "plaintiff's *ankle* injuries" instead of "plaintiff's injuries," the verdict could not stand. Appellant was treated at the local hospital for a bruised ankle and was on crutches for 1 week after the accident. It would strain logic to assume that this injury caused him no pain and suffering. Even Diamond M's counsel apparently conceded that much in his closing argument to the jury:

> But, if you find that we were at fault and that's your decision, then the man should be given something for the injury to his foot.

Record, Tr., Vol. I, at 65–66.

Nor can we assume that the jury believed that the ankle injury was the result of a prior accident. There was no dispute at the trial as to whether appellant was struck on the ankle while working on Diamond M's rig. Diamond M made no attempt to prove that the ankle injury was attributable to any accident other than the one upon which appellant based this suit.

Finding no explanation for the inconsistencies in the jury's answers, we hold that the district court erred in denying appellant's motion for a new trial.

■ We address one further issue raised by appellant, likely to arise on retrial. Diamond M was permitted to introduce evidence tending to show that appellant received workman's compensation benefits while employed at J & L. The evidence was provided by Judy Centenio, an employee of J & L's workman's compensation insurance carrier. Ms. Centenio testified that

appellant had made a claim for benefits while an employee of J & L. Defense counsel then introduced a letter from Ms. Centenio's files which was written by appellant's attorney and which directed the insurance company to send the workman's compensation checks directly to appellant. Appellant's position is that the evidence was admitted in violation of the collateral source rule.[1]

■ The collateral source rule[2] bars an employer-tortfeasor from mitigating damages "by setting off compensation received by the employee from an independent source." *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972). In its simplest application, the rule prohibits the introduction of evidence offered to show that the employee already has been compensated for his injuries. Two Supreme Court cases, although not of recent vintage, indicate that the rule also bars evidence of payments from a collateral source even when the evidence is not offered to prove the fact of payment. *In Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 37, 84 S.Ct. 1, 3, 11 L.Ed.2d 4 (1963), the Court held that it was error to admit evidence that the plaintiff had received benefits under the Longshoremen's and Harbor Workers' Compensation Act, although the evidence was offered only to establish that the plaintiff was not a seaman within the meaning of the Jones Act. That same Term, in a Federal Employer's Liability Act case, the Court held that evidence of disability payments was not admissible "for the purpose of impeaching the testimony of petitioner as to his motive for not returning to work and as to the permanency of his injuries." *Eichel v. N.Y.*

*Central R.R. Co.*, 375 U.S. 253, 254–55, 84 S.Ct. 316, 316, 11 L.Ed.2d 307 (1963). In neither of those cases was the evidence offered in mitigation of damages. Nevertheless, the evidence was held inadmissible because of the danger that the jury *might* consider it in calculating damages. Thus, the collateral source rule bars both evidence directly bearing on damages *and* evidence which might be considered by the jury in assessing damages.

■ The jury should not have been allowed to consider the fact that appellant was receiving workman's compensation payments from J & L's insurer. Therefore, on retrial, the letter from appellant's attorney to J & L's insurer should not be admitted for any purpose. In determining whether to admit evidence indicating only that a claim was made, the court should consider whether the jury might use the evidence improperly and whether a cautionary instruction would be sufficient to prevent the jury from considering the evidence for an improper purpose.

REVERSED and REMANDED.

---

1. In response, Diamond M argues that the evidence was admissible under the admissions exception to the rule against hearsay, Fed.R.Evid. 801(d)(2). The answer to this argument simply is that "[n]othing in the new *Federal Rules of Evidence* authorizes departure from the [collateral source] rule." *Riddle v. Exxon Transp. Co.*, 563 F.2d 1103, 1107 (4th Cir. 1977). Alternatively, Diamond M seems to take the position that the collateral source rule only bars evidence of payment and not evidence that a claim was made. Even if we were to adopt this interpretation of the collateral source rule, it would not help Diamond M in this case. Contrary to Diamond M's argument, we believe that when a jury is presented with a letter demanding that checks be sent directly to the claimant, it would have no choice but to assume that the claimant did receive benefits.

2. The collateral source rule is applicable to suits brought under the Jones Act. *See Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963).