493 So.2d 829 (1986)
Thurman R. KITCHEN, et ux., Plaintiffs-Appellants,
v.
DUKE'S ESCORT SERVICE, et al., Defendants-Appellees.
No. 17952-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Rehearing Denied September 18, 1986.
Writ Denied November 14, 1986.
*830 Sockrider & Bolin by James E. Bolin, Jr., Shreveport, for Thurman & Gladys Kitchen and Ranger Ins. Co.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for Excalibur Ins. Co. and D.P. Bonham Transport.
Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, Shreveport, for Duke's Escort Service.
Peatross, Greer & Hayter by L. Edwin Greer, Shreveport, for City of Shreveport & American Excess Inc. Co.
Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for Mid Continent Cas. Co.
Sherryl J. Tucker and Robert T. Talley, Baton Rouge, for State of La., Dept. of Transp. and Development.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
*831 JASPER E. JONES, Judge.
The plaintiffs Thurman and Gladys Kitchen and their property damage insurer, Ranger Ins. Co., appeal a judgment rejecting their demands against Bonnie and Billy Duke, d/b/a Duke's Escort Service (Duke's), their liability insurer, Mid Continent Casualty Company and the State of Louisiana. Duke's answered the appeal seeking to preserve its claim for indemnity or contribution against other defendants. Jack F. Daly, judicial liquidator for Excalibur Insurance Company, appeals seeking to preserve its worker's compensation subrogation rights derived from paying compensation benefits to the Kitchens' and to recover expenditures for damage to the cargo and the cost of cleaning up the accident site from the defendants. Mid Continent answered the appeal contending the trial court was correct on the liability issue and alternatively contending its policy does not afford coverage to the Dukes' under the facts of this case.
The issues on appeal are:
(1) Did the trial court err in concluding the State of Louisiana (DOTD) was not negligent in failing to erect a sign designating the height of the overpass struck by plaintiff's truck. Was the DOTD liable under the strict liability concept of C.C. art. 2317; and
(2) Did the trial court err in concluding Duke's was not negligent although it failed to use a height pole while escorting the vehicle which struck the overpass.

The Facts
The accident giving rise to this litigation occurred on January 26, 1983, as Duke's was escorting through Louisiana two tractor-trailer rigs leased by D.P. Bonham Transfer Company. One rig was owned by Thurman R. Kitchen and he was driving this rig hauling an oversize load measuring 15'6" in height. Gladys was riding with Thurman as his relief driver. The other rig was hauling a similar load. Because these rigs were hauling oversize loads through Louisiana, D.P. Bonham Transfer Co. obtained a required permit from the Louisiana Department of Transportation & Development (DOTD) specifying the route the vehicles were to follow through the state.
As the escort vehicles approached Louisiana from Texas, the escort vehicles left the caravan and proceeded into Louisiana to be inspected. Both escort vehicles passed inspection and returned to join the caravan near Waskom, Texas. As the caravan traveling east on U.S. 80 approached the western edge of Shreveport, they observed a sign requiring truckers hauling loads higher than 13'6" to obtain a police escort. The caravan stopped and Kitchen called the Shreveport City Police Department which dispatched Officer Linda Reppond to escort the group. After inspecting the DOTD route permit obtained by her from Kitchen, Officer Reppond informed the group a bridge (Texas Street Bridge) on their designated route was out and she would lead them on an alternate route through Shreveport. It was later discovered the bridge Officer Reppond was referring to was not on the route designated by the DOTD. Reppond testified she inspected the route permit only to obtain the name of the company from it. She further testified she was unable to read a route permit and she had learned from the dispatcher the caravan would travel east on Highway 80 through Shreveport. Because Reppond knew the Texas Street Bridge on Highway 80 was out, she rerouted the caravan through north Shreveport and across the Red River on I-220.
The caravan departed with Officer Reppond leading, followed by Mrs. Duke in her escort vehicle, followed by the plaintiffs in their rig, followed by Mr. Patterson in the second rig with Mr. Duke following as the rear escort. Officer Reppond led the caravan through Shreveport and as they entered Bossier City, Reppond left the caravan after instructing Duke to exit I-220 onto U.S. 80 at the race track and proceed east on U.S. 80.
As the group was proceeding east on Highway 80, the high load upon plaintiffs *832 truck struck an overpass.[1] The overpass, which DOTD records reflected to have a 15'5" clearance, was not marked with a sign designating its height. It was lightly raining at the time of the accident. Thurman and Gladys sustained injuries which required surgery, and their rig and the load they were hauling were damaged.
The plaintiffs, their insurer, Ranger Insurance Co. and D.P. Bonham Transfer Co. and its insurer, Excalibur Ins. Co. all settled their claims against the City of Shreveport, which had been a defendant in these proceedings. The suit against the City was dismissed before the case was decided. The trial court, in excellent written reasons, found the accident to have been caused solely by the negligence of Officer Reppond and the City of Shreveport. The trial judge found no negligence attributable to the Dukes. The trial judge found the State of Louisiana guilty of no negligence and further found the State was not "strictly liable" under C.C. art. 2317.

Issue No. 1Was the DOTD Negligent?
The plaintiffs contend the trial court erred in concluding the DOTD was not negligent although the overpass which they struck had no sign designating its vertical clearance. They point out the bridge inspection reports, which were introduced into evidence, show the DOTD had notice this overpass was being scraped by overheight loads since October, 1977. The plaintiffs further point out that although the DOTD required a permit for loads above 13'6" wherein a route is designated, the DOTD knew overheight loads would deviate from their assigned routes from time to time. They point out the testimony of Mr. Evans, an expert in traffic engineering, to the effect that the lack of a low clearance sign on this overpass was a violation of the State's Uniform Manual For Traffic Control Devices.
The DOTD contends the trial court's factual finding that the sole cause of the accident was the negligence of the City of Shreveport is supported by the record and not manifestly erroneous.
The trial court's reasons supporting a finding of no negligence or strict liability on the part of the DOTD noted LSA-R.S. 32:387 requires a truck operator to obtain a permit from the DOTD before hauling an oversize load in Louisiana. The DOTD oversize permit designates the route the oversize load must follow through Louisiana. The trial court found this procedure to be a reasonable means of protecting the motoring public from this harm.

Applicable Law
LSA-C.C. art 2315 provides in pertinent part:
"Every act of man that causes damage to another obliges him by whose fault it happened to repair it."
LSA-C.C. art. 2316 provides:
"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
In Seals v. Morris, 410 So.2d 715 (La.1982), our supreme court set forth the elements of a cause of action under LSA-C.C. arts. 2315 and 2316 as follows:
"Under these articles, the elements of a cause of action are fault, causation and damage. The existence of a legal duty coupled with a breach of that duty are prerequisites to any determination of fault. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. In all cases duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. A breach of a legal duty that causes damage to another makes *833 the offender liable under the above articles."
The Department of Highways is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. U.S.F. & G. Co. v. State of La., Through the Dept. of Highways, 339 So.2d 780 (La.1976); Wilkinson v. American Ins. Co., 311 So.2d 584 (La.App. 3d Cir.1975). Generally, it is the duty of the Highway Department to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. LSA-R.S. 48:35;[2]Stephens v. State, Through the Dept. of Transp., 440 So.2d 920 (La.App. 2d Cir. 1983), writ denied, 443 So.2d 1119 (La. 1984); Barr v. State, Through the Dept. of Highways, 355 So.2d 52 (La.App. 2d Cir. 1978), writ denied, 355 So.2d 1324 (La. 1978). This duty includes providing proper safeguards or adequate warning of dangerous conditions in the highway. Stephens v. State, Through the Dept. of Transp., supra; Barr v. State, Through the Dept. of Highways, supra.
We agree with the trial judge the failure of the DOTD to post a sign reflecting the vertical clearance on the overpass struck by the Kitchen truck did not constitute negligence. LSA-R.S. 32:381 provides: "The height of any vehicle shall not exceed thirteen feet, six inches." LSA-R.S. 32:387 requires a special permit, from the DOTD, for vehicles which exceed thirteen feet, six inches in height to use Louisiana highways. The DOTD issued a special permit to D.P. Bonham Transfer Co. designating the route these vehicles were to follow as they traveled through Louisiana. This permit procedure is a reasonable means of protecting motorists with vehicles above thirteen feet, six inches in height from the danger of encountering low overpasses. If the caravan had followed the route designated on the permit, they would not have encountered this low overpass. In addition, the Louisiana Manual on Uniform Traffic Control Devices, a copy of which was filed in evidence, provides: "The Low Clearance sign is intended for use to warn vehicle operators of clearances less than the maximum vehicle height permitted plus 12 inches." This directive requires Louisiana overpasses with a clearance of less than 14'6" to be posted with a clearance sign. The overpass the plaintiffs struck had a clearance of 15'5" and there was no requirement that this clearance be displayed by sign to motorists. The law prohibits any vehicle which has a height in excess of 13'6" from attempting to go under any overpass unless it has a special permit received from the DOTD. We conclude that DOTD discharges its duty of constructing and maintaining the highways in a reasonably safe manner by signing vertical clearances of less than 14'6" and by utilizing the permit procedure described above which protects motorists hauling oversize loads from the danger of low overpasses.
In order for strict liability to be applicable the damage must be caused by a vice or defect in the thing which creates an unreasonable risk of harm. Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980).
The plaintiff contends the overpass was a thing in possession of the DOTD which contained a vice or defect that created an unusual risk of harm because it had a low vertical clearance which was not reflected by an appropriate sign. We find this argument without merit for the reason that there was no unreasonable risk of harm in this unsigned overpass. All motorists are told by the statute not to drive on our highways if the vehicle and load exceed 13'6" unless you first get a permit from the DOTD. If you obtain the permit, the specialist at the DOTD will route you on roads that contain only vertical clearances high enough for your vehicle. You then avoid *834 low vertical clearances by following the route designated. There is no vice or defect in the thing here and no strict liability.

Issue No. 2Was Duke's Negligent?
Plaintiffs contend the trial court erred in failing to find Duke's negligent. They point out the DOTD Memorandum No. 47 strongly recommends a clearance bar of some design be attached to the escort vehicle to warn of clearance problems of the load being escorted. Plaintiffs contend Duke's was negligent in escorting them without a clearance bar.
Duke's contends its escort vehicles were equipped in compliance with law and both escort vehicles passed inspection in Louisiana shortly before the accident. Duke's argues Memorandum No. 47 is only a recommendation and height poles or clearance bars are not customarily used in Louisiana. In addition, Duke's contends the failure to use a height pole was not a legal cause of the accident. Mrs. Duke testified that as the caravan approached the overpass, she warned Mr. Kitchen the road was rough and the overpass looked low, but Mr. Kitchen did not heed the warning. Therefore, Duke's contends a height pole would not have enabled her to give Mr. Kitchen any better or earlier warning.
Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk or harm. It is a departure from the conduct expected of a reasonable, prudent man under like circumstances. Pence v. Ketchum, 326 So.2d 831 (La.1976); Craft v. Caldwell Parish Police Jury, 455 So.2d 1226 (La. App.2d Cir.1984).
In the instant case, we conclude there was no manifest error in the trial court finding of no negligence on the part of Duke's although Duke's chose not to use a height pole while escorting these oversized loads.
Mr. James E. Smith, an expert in the escort service business, testified that in his ten years of escorting vehicles he never used nor observed anyone else using a height pole. In addition, Duke's escort vehicles passed inspection in Louisiana shortly before the accident. Further, failing to use a height pole in this case was not a legal cause of this accident.
For negligence to be actionable it must be a cause in fact and a legal cause of the accident. The cause in fact test requires that but for the defendant's conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980); Fowler v. State Farm Fire & Casualty Ins. Co., 485 So.2d 168 (La.App. 2d Cir.1986).
In the instant case, there was no substantial relationship between the accident and the failure to use a height pole. Mrs. Duke testified that as she approached the overpass, as the lead escort, she warned Mr. Kitchen the road was rough and the overpass looked low, but Mr. Kitchen did not heed the warning. Any warning based upon the use of a height pole would have been delayed until Mrs. Duke's vehicle actually passed under the overpass when the pole would contact the overpass. The record establishes Mr. Kitchen was traveling in close proximity to Mrs. Duke's escort vehicle. Given the distance between these vehicles, the wet condition of the road and the momentum of the plaintiffs' load, the use of a height pole would have been of little assistance in preventing this accident. These circumstances provide substantial evidence to support the trial court's finding that Duke's was guilty of no negligence which caused this accident.
For the foregoing reasons, the judgment appealed is AFFIRMED. Jack F. Daly, judicial liquidator for Excalibur Insurance Company, Thurman and Gladys Kitchen and Ranger Insurance Company are equally cast for all costs on appeal.
NOTES
[1] Included in the trial court reasons for judgment was the following finding of fact:

"The route prescribed by the Louisiana Department of Transportion (sic) and Development was a southerly route through the City of Shreveport and surrounding area which would have brought the caravan back onto U.S. Highway 80 east of the overpass that was struck by the oversized load driven by Mr. Kitchen."
[2] LSA-R.S. 48:35 provides in pertinent part:

"The office of highways of the Department of Transportation and Development shall adopt minimum safety standards with respect to highway design, construction, and maintenance."