Robert M. GATES, Plaintiff-Appellant,

v.

SHELL OIL (Shell Offshore, Inc.),
Defendant-Appellee,

v.

TOTAL SERVICES, INC., and
Northwest Insurance Co.,
Intervenors-Appellants.

No. 86–3005.

United States Court of Appeals,
Fifth Circuit.

March 30, 1987.

As Amended May 8, 1987.

William Rutledge, Bob F. Wright, Domengeaux & Wright, Lafayette, La., for Gates.

Jeffrey P. Lozes, New Orleans, La., for Total Services and Northwest Ins. Co.

Arthur A. Crais, New Orleans, La., Robert C. Leininger, Jon D. Picou, Bailey & Leininger, Metairie, La., for Shell Oil.

Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Robert Gates won a jury verdict against Shell Oil Co. for personal injuries, but the district court granted judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial. Gates filed a timely appeal, and we reverse the granting of a JNOV but affirm the granting of a new trial. Both Gates and Shell complain also that the district court made improper evidentiary rulings and gave an improper jury charge. Because we remand for a new trial, we address those rulings that are likely to arise again at the new trial.

## I. *Facts*

Shell Oil Co. drills for oil and gas on the Outer Continental Shelf off the Louisiana coast. In 1982, Shell hired Total Services, Inc. to install piping on a new drilling plat-

form that was under construction. Gates worked as a pipefitter for Total, and Fred Lovern was Total's supervisor for the work on the Shell platform. Shell hired an independent contractor, James DuBois, to inspect Total's work as it progressed.

On May 10, 1982, Gates injured his back when he and Louis Erwin, a Shell employee, tried to lift and move a valve assembly. After the injury, Total's insurer, Northwest Insurance Co., paid Gates $94,438.36 as compensation and medical benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*

On November 8, 1982, Gates sued Shell under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*,[1] claiming that Erwin caused his injuries by negligently ordering him to pick up the valve assembly. Gates did not name Total or Northwest as a defendant, but Northwest intervened for reimbursement of LHWCA benefits out of any recovery Gates won against Shell. Shell denied that it was liable and claimed that Total, if anyone, caused Gates' injury.

At trial, both sides called several witnesses to testify about how Gates hurt his back and the seriousness of the injuries. Fred Lovern testified by deposition that minutes before the injury he went to get a crane to move the valve and warned Gates not to move the valve by himself. Gates testified that the valve lay underneath a ledge, out of reach of the crane, and that the valve had to be moved a few feet by hand so that the crane could reach it. Total employees had shipped the valve to the platform and placed it under the ledge. Gates' own account of the accident is as follows:

> This man came up to me, a Shell man, and asked me if I needed any help with this valve, and I told him no, that I was waiting. [H]e just turned around and started walking away, and he come back . for me and then he told me, "Come on, me and you can lift this valve." ... I

grabbed a hold of it and he grabbed it [and as we lifted, I hurt my back].

Several witnesses—including Gates—testified that Lovern was Gates' boss. DuBois and Richard Johnston, Total's president, testified that Erwin had no authority to control Total's employees and that Lovern supervised Total's workers and made sure they worked in a "safe manner." Shell hired Erwin only to watch for fires and fire hazards during construction and to familiarize himself with the platform. Gates himself had never seen Erwin do any work or give any orders; nevertheless, Gates claimed he saw Erwin's comment as an order to pick up the valve assembly and that he had to obey.

Erwin's version of the accident differed from Gates'. Erwin testified that he saw Gates standing over the valve, that he approached Gates without saying a word, and that each of them picked up one end of the valve at the same time.

Both Erwin and Gates estimated that the valve assembly weighed about 200 pounds. Carl Brown, who works for the valve manufacturer, testified that the valve itself, without the assembly, weighed 123 pounds. Michael Salmon, another Total employee, testified that he had lifted similar valves in the past with the help of one other person without injury. Gates also had "handled" similar valves in the past.

The jury found that both Gates and Shell were negligent, that Gates' negligence had contributed thirty percent to his injuries, and that Gates suffered $315,000 in damages. The district court entered judgment on the verdict for $220,500 to Gates (70 percent of $315,000) and also for Northwest against Gates for the benefits it had paid under the LHWCA.

Shell moved for a JNOV or a new trial, and the district court granted the motions without opinion. On appeal to this Court, we ordered the court to make written findings as the bases for its reasons for granting the new trial motion. The district court

---

1. This act regulates operations on the Outer Continental Shelf and grants federal courts concurrent jurisdiction with state courts over claims such as Gates'. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981).

did so in an order dated September 17, 1986.[2]

## II. *JNOV and New Trial*

A JNOV is justified if, viewing the evidence in the light most favorable to the non-movant, no reasonable jury could have found in favor of the non-movant. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). On the appeal of a JNOV, we review the evidence anew, and we apply the standard announced in *Boeing*. *Worthington Corp. v. Consolidated Aluminium Corp.*, 544 F.2d 227, 232 (5th Cir. 1976). The district court's alternative granting of a new trial requires a *less stringent* standard. The granting of a new trial is appropriate if the verdict was against the weight of the evidence. Rule 59, Fed.R.Civ.P. We will reverse the granting of a new trial only if the district court abused its discretion. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir.1985).

■ Upon our review of all the evidence, we find that a reasonable jury, viewing the evidence most favorably to Gates, could have found that Shell was negligent and that its negligence proximately caused Gates' injury. Specifically, the jury could have believed that Erwin ordered Gates to lift the valve, that Gates reasonably believed that he had to obey Erwin's order, and that Erwin should have known that the valve was too heavy for the two of them to lift safely. Thus, we must reverse the district court's order granting Shell a JNOV.

■ We affirm, however, the granting of a new trial. In granting the new trial, the district court focused on the fact that Gates worked for Total under Lovern's supervision. Erwin never had given orders to Gates before the accident and had no authority to do so. Under these circumstances, Gates' own account of Erwin's alleged "order" suggests that it was more likely that Erwin offered to help Gates but did not threaten or pressure him in any way. Even if Erwin did "order" Gates to lift the valve, many workers, including Gates, safe-

ly had handled similar valves in the past. Gates produced no evidence—other than the weight of the valve—to show that Erwin should have known that the valve was too heavy to lift. Considering the evidence of the lack of connection of Shell with Gates' work and the strong evidence that Shell was not negligent, we cannot conclude that the district court abused its discretion in granting a new trial.

## III. *Objections to Evidentiary Rulings and Jury Instructions*

Both Gates and Shell complain that the district court erred by excluding certain evidence from the jury and by giving certain jury instructions.

Generally, a trial court has broad discretion to conduct the trial in an efficient and orderly manner in the admission or exclusion of evidence. *Jon-T Chemicals, Inc. v. Freeport Chemical Co.*, 704 F.2d 1412, 1417 (5th Cir.1983); *Scheib v. Williams-McWilliams Co.*, 628 F.2d 509, 511 (5th Cir.1980). Even improper evidentiary rulings do not constitute reversible error unless "a substantial right of the party is affected." Rule 103(a), Fed.R.Evid. In addition, the district court has broad discretion to compose the instructions to the jury, as long as they are fundamentally accurate and not misleading. *Scheib; Smith v. Borg-Warner*, 626 F.2d 384, 386 (5th Cir. 1980). The district court also has broad discretion to submit and frame interrogatories to the jury. *Bryan v. Cargill, Inc.*, 723 F.2d 1202, 1204 (5th Cir.1984).

We do not undertake to intrude on the trial court's discretion to conduct the new trial here directed, especially because we cannot forecast how evidence will be presented. Nevertheless, we have reviewed Gates' and Shell's objections at the first trial, and we address those of the objections that are likely to arise again. We stress, though, that we affirm the granting of a new trial because the evidence did not support the jury's finding

---

**2.** Rule 50(c)(1), Fed.R.Civ.P., provides that a district court that grants JNOV and a new trial

"shall specify the grounds for granting ... the motion for the new trial."

and *not* because of the trial court's evidentiary rulings or jury instructions.

### A. *Evidentiary Matters*

#### I. *Workers' Compensation Payments*

At trial, Gates testified that he had to return to work a few months after his injury because he was "off comp" and desperately needed money. Shell then, for two purposes, wanted to submit evidence that Gates continued to receive $496 per week in benefits under the LHWCA: (1) to impeach Gates' claim of impecuniousness and (2) to show that Gates lacked motivation to return to work to mitigate his damages. Shell presented other evidence, including the testimony of an expert vocational counselor, that Gates could have found work after his injury. The district court excluded the evidence of compensation benefits.

■ As the district court recognized, evidence of collateral benefits may unfairly prejudice the recipient before the jury. *See Tipton v. Socony Mobil Oil Co.,* 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963) (evidence of benefits under LHWCA too prejudicial and thus excluded); *Eichel v. New York Central Railroad Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) (excluding evidence of Railroad Retirement Act benefits, even though defendant offered them to show plaintiff's motive for staying out of work); *Bourque v. Diamond M Drilling Corp.,* 623 F.2d 351 (5th Cir.1980). In *Savoie v. Otto Candies, Inc.,* 692 F.2d 363 (5th Cir.1982), however, we noted an exception to the general rule that the jury may not learn of collateral benefits. Compensation benefits may be admitted for a limited purpose (in *Savoie,* it was to prove seaman status) if there is little risk of prejudice and the court gives a limiting instruction to the jury. *See also Simmons v. Hoegh Lines,* 784 F.2d 1234, 1237 (5th Cir.1986) (recognizing the *Savoie* exception).[3]

We cannot foresee whether Gates will try again to prove he was not receiving LHWCA benefits or what evidence Shell would produce to show that Gates could have returned to work. We note only that the decision to admit or exclude evidence of LHWCA benefits under Rule 403, Fed.R. Evid., rarely is beyond the trial court's discretion. We see no abuse of discretion in the court's ruling in the precise pattern of the evidence in the trial of this case. *See United States v. Jackson,* 576 F.2d 46, 49 (5th Cir.1978).

#### II. *Statutory Employer Defense*

As set out above, Gates brought suit under the OCSLA. *See* 43 U.S.C. § 1349 (granting federal court jurisdiction); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223 (5th Cir.1985). Federal law governs suits under the OCSLA. The statute, however, adopts as the controlling law the law of the state adjacent to the accident, in this instance Louisiana, to the extent that the state law is "not inconsistent with" federal law. 43 U.S.C. § 1333 (a)(2)(A). *McNeese v. Reading & Bates Drilling Co.,* 749 F.2d 270, 273 (5th Cir. 1985) (state law is "surrogate federal law"); *Hyde v. Chevron USA, Inc.,* 697 F.2d 614, 618 (5th Cir.1983).

Gates qualified for and was receiving benefits under the LHWCA. The LHWCA, like most compensation statutes, provides the exclusive remedy for an injured employee against his own employer. *Washington Metro Area Transit Authority v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). Under the LHWCA, Total and not Shell was Gates' employer. *See Trussell v. Litton Systems, Inc.,* 753 F.2d 366, 369 n. 6 (5th Cir.1984).

Gates' suit against Shell is a third party suit for negligence. It is governed by Louisiana law, and Shell may raise the usual defenses to such a suit under Louisiana law so

---

3. Other courts have carved out exceptions to *Tipton* and *Eichel* that are relevant to the instant case. For instance, the Eighth Circuit has allowed evidence of collateral benefits to impeach a plaintiff who misleads the jury. *See Lange v. Missouri Pacific Railroad Co.,* 703 F.2d 322 (8th Cir.1983). In the First Circuit and Louisiana

state courts, evidence of compensation may be admissible to show lack of motivation to return to work. *DeMedeiros v. Koehring Co.,* 709 F.2d 734 (1st Cir.1983); *Laumann v. Sears, Roebuck & Co.,* 391 So.2d 954 (La.App. 4th Cir.1980); *Lewis v. Fidelity and Cas. Co. of New York,* 230 So.2d 636 (La.App. 2nd Cir.1970).

long as the defenses are consistent with congressional intent. *Olsen v. Shell Oil Co.*, 561 F.2d 1178, 1188 n. 8 (5th Cir.1977); *Bourg v. Texaco Oil Co., Inc.*, 578 F.2d 1117, 1120 (5th Cir.1978). But Shell claims that it is immune from this third party suit because it was Gates' "statutory employer" under the Louisiana compensation statute. Louisiana has a workers' compensation law which, like the LHWCA, provides the exclusive remedy for an injured employee against his employer. *See* La.Rev.Stat. Ann. § 23:1032 (West 1985).

■ For the "statutory employer" defense to apply, Louisiana's workers' compensation law would have to extend to a worker like Gates. There is Louisiana authority that its compensation law can extend to offshore workers. *Thomas v. Teledyne Movible Offshore, Inc.*, 419 So.2d 833 (La.1982). But it can apply only if it is not in conflict with federal law, and OSCLA, 43 U.S.C. § 1333(b) applies the LHWCA to offshore workers such as Gates. In the typical pattern of workers compensation statutes, the LHWCA does provide for the injured employees suing third persons who caused the injury through their negligence. 33 U.S.C. § 933. In this case, as pointed out above, the law of the adjacent state, Louisiana, is applicable in such a third party suit. 43 U.S.C. § 1333(a)(2)(A).

Contrary to the contention of Shell Oil, however, the state law which is applicable cannot be the state workers' compensation law because the LHWCA is the compensation statute applicable. The Louisiana compensation law setting up the "statutory employer" definition of coverage is inconsistent with and contrary to the LHWCA since the employer was Total Services under the LHWCA. The Louisiana law which is asserted to make Shell the employer is the Louisiana compensation law. It is, therefore, inconsistent with the federal compensation law. Under the critical statutory provision, it follows that the state law is not applicable.

Indeed, this analysis is sharpened further by noting that in 43 U.S.C. § 1333(b)(2) there is a specific definition of "employer" relating to the definition of "employer" under the LHWCA, 33 U.S.C. § 902(4) as it is made applicable to offshore oil workers by OCSLA. Nothing in that definition gives any recognition to any concept of a "statutory employer" in the sense of the Louisiana law. Nor does it countenance the possibility that there can be one employer and also another statutory employer under the Federal compensation act. It must be concluded that while Gates is suing Shell Oil for a negligent tort and Louisiana law is applicable, Shell Oil has available to it only the defenses which apply under the Louisiana tort law and which are not inconsistent with federal law. Defenses, including the defense of statutory employer, created by the Louisiana compensation law are not available. As a matter of law, then, Shell does not have the statutory employer defense available to it in the retrial of this case.

### III. *Lovern's Deposition*

■ At trial, Gates read portions of a deposition given by Fred Lovern, Gates' supervisor. Shell chose not to "cross-examine" the deposition by reading any other portions. Gates then tried to "re-direct" the deposition by reading what he had omitted on "direct" examination. The district court prevented Gates from reading the additional testimony after Shell waived its cross-examination. We cannot tell from

---

4. In *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), the Supreme Court limited the constitutional reach of state compensation statutes to work that is "maritime but local." *See Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719, 100 S.Ct. 2432, 2436, 65 L.Ed.2d 458 (1980); *Director, Office of Workers' Compensation Programs v. Perini North River Associates*, 459 U.S. 297, 306, 103 S.Ct. 634, 641, 74 L.Ed.2d 465 (1983). In the case before us, Congress adopted state law as surrogate *federal* law under the OCSLA. Thus, the application of Louisiana's workers' compensation law does not intrude on Congress' powers over maritime matters and poses no constitutional problem.

5. If Shell was Gates' statutory employer, then the statutory "compensation remedy ... is exclusive, thus barring recovery in tort." *Miles,* 777 F.2d at 1071. Thus, if Total and Shell were Gates' employer and statutory employer respectively, then Gates may recover under the LHWCA or the Louisiana workers' compensation statute, whichever offers greater benefits, but he may not recover in court against either employer as a third party tortfeasor.

the record whether the rest of the deposition would even be admissible. Moreover, we do not know whether Gates will present Lovern's testimony in the same manner at the next trial. The district court clearly did not abuse its discretion by excluding Gates' "re-direct."

### IV. *The Discogram*

Gates' primary doctor, Robert Fleming, testified about his medical treatment of Gates. Early in his care of Gates, he conducted a myelogram, which indicated some "assymetric changes" at one disc in Gates' lower back. He then conducted a CAT scan and an EMG Nerve Conduction Study, both of which returned only normal results. When Gates continued to complain of pain, Fleming conducted a "lumbar discogram," which may successfully test, among other things, whether the patient's complaints of pain are sincere or fabricated. Fleming described the discogram procedure. He also admitted that experts dispute the value of the discogram and that he uses it only in "questionable" cases when more conventional tests do not reveal the cause of the patient's pain. Partly as a result of the discogram, Dr. Fleming concluded that Gates had a "disc abnormality" that accounted for some of his pain.

■ Shell then called Dr. Monroe Laborde who testified that the discogram cannot diagnose or verify back pain. Shell also called Dr. Carl Culicchia, who stated that many competent doctors still use the discogram, although experts dispute its effectiveness. Gates then wanted to call another expert to bolster the discogram's reliability. The court excluded such additional testimony. The discogram results formed only a small part of Gates' case, and Dr. Fleming himself admitted that experts dispute the discogram's validity. Again, the district court clearly did not abuse its discretion in calling a halt to further testimony.

### B. *The Jury Charge*

### I. *Mitigation of Damages*

The district court told the jury that Gates had the duty to mitigate his damages and instructed:

> [I]f you should find from a preponderance of the evidence that the plaintiff failed to seek out or take advantage of a business or employment opportunity that was reasonably available to him ... then you should reduce the amount of his damages by the amount he could reasonably have realized....

Gates argues that the court should have charged the jury that Shell has the burden of proving Gates could have mitigated but failed to do so.

■ Under Louisiana law, a defendant tortfeasor has the burden to show that the plaintiff could have mitigated damages and that damages should be reduced. *Perrette v. City of Slidell,* 465 So.2d 63 (La.App.—1st Cir.1985); *Reeves v. Travelers Insurance Co.,* 329 So.2d 876 (La.App.—2nd Cir. 1976). At the next trial, the district judge should instruct the jury that Shell has this burden.

### II. *Negligence*

The district court charged the jury as follows:

> In order to prevail on [his] claim, the plaintiff must prove by a preponderance of the evidence: one, that the defendant was negligent; and two, that such negligence was a proximate cause of damage sustained by the plaintiff.

> Let's now consider the concept of negligence. Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances.

> Negligence is a proximate cause of damage if it directly and in natural and continuous sequence produces, or contributes substantially to producing such damage, so it can be reasonably said that except for the negligence, the loss, injury or damage would not have occurred.

**1516**

The district court went on to charge that "[t]he plaintiff claims that the defendant was negligent in one or more of the following particulars: One, that defendant was negligent in improperly ordering plaintiff to lift a valve; two, that defendant was negligent in failing to provide assistance to plaintiff to lift the valve."

The court then asked the following interrogatory: "Do you find from a preponderance of the evidence that negligence on the part of the defendant was a proximate cause of the plaintiff's injuries?"

■ First, Shell complains that the district court erred by charging that Shell could be negligent for "failing to provide assistance" to Gates. Shell had no duty to discover and remedy hazards created by Total. *Wallace v. Oceaneering International*, 727 F.2d 427, 436–37 (5th Cir.1984). The uncontroverted testimony at trial established that *Total* put the valve under the ledge, out of reach of the crane. Gates' theory was that Erwin negligently ordered him to lift the valve. Perhaps this theory includes the claim that Erwin should have obtained additional help before ordering Gates to lift. If Erwin never ordered Gates to lift, however, then Shell had no duty to assist Gates. Unless the evidence supports such an instruction at the next trial, the district court should not charge that Shell had a duty to supply additional help to Gates without first deciding if Erwin ordered Gates to help move the valve.

■ Next, Shell complains (1) that the district court should have charged the jury regarding "duty—risk" rather than "proximate cause" and (2) that the court should have split the first interrogatory into two parts—negligence and causation.

The Louisiana Supreme Court recently stated that

Louisiana has for some time employed the duty—risk analysis to determine legal responsibility in tort claims.

The pertinent inquiries are:

I. Whether the conduct of which plaintiff complains was a cause-in-fact of the harm;

II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;

III. Whether there was a breach of that duty; and

IV. Damages.

*Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1369–70 (La.1984) (security guard neglected his duties and allowed armed robber to enter restaurant and injure plaintiff). *See also Eldridge v. Downtowner Hotel*, 492 So.2d 64, 65 (La.App.— 4th Cir.1986).

Other courts in Louisiana, however, have formulated different definitions of negligence. Among the variations, most explain that negligence is only actionable if it is the "legal" or "proximate" cause of some harm. *See Sinitiere v. Lavergne*, 391 So.2d 821 (La.1980) (defendant only liable if acts were "both a cause in fact ... and a legal cause of the injury"); *Kitchen v. Duke's Escort Service*, 493 So.2d 829, 834 (La.App.—2nd Cir.1986) (negligence is the failure to act as a "reasonable, prudent" person, and negligence must be a legal cause of harm); *Ballew v. Southland Corp.*, 482 So.2d 890 (La.App.—2nd Cir. 1986) (elements of negligence are duty, breach of duty, cause, and damages, and harm must be "foreseeably associated with the breach"); *Upton v. L.O.B. Enterprises*, 492 So.2d 1252, 1254 (La.App.—4th Cir. 1986). One Louisiana appeals court noted that the duty—risk analysis is the preferred one but that the trial court may instruct the jury regarding proximate cause or another formula that conveys the correct legal principles. *Meeks v. State Farm Fire & Casualty Co.*, 402 So.2d 138 (La.App.—1st Cir.1981).

In the case before us, the district court's instruction as a whole reasonably informed the jury of Louisiana law.

### IV. *Conclusion*

We reverse the granting of a JNOV but affirm the granting of a new trial.

The decision of the district court is

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.