881 F.2d 215
 Robert M. GATES, Plaintiff-Appellant, Cross-Appellee,
v.
SHELL OFFSHORE, INC., (Substituted as Party Defendant for
Shell Oil), Defendant-Appellee, Cross-Appellant.
v.
NORTHWEST INSURANCE COMPANY, Intervenor-Cross-Appellee.
 No. 88-3414.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 29, 1989.
Rehearing and Rehearing En Banc Denied Oct. 2, 1989.
 
 William P. Rutledge, Lafayette, La., for plaintiff-appellant-cross-appellee.
 J. Daniel Picou, Leininger, Larzelere & Picou, Metairie, La., for Shell.
 Jeffrey P. Lozes, New Orleans, La., for Northwest Ins.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, DAVIS, and DUHE, Circuit Judges.
 DUHE, Circuit Judge:
 
 I. Facts and Procedural History
 
 1
 This case is before us for the second time. In Gates v. Shell Oil, 812 F.2d 1509 (5th Cir.1987) ("Gates I"), we reversed the trial court's grant of Shell's motion for judgment notwithstanding the verdict and affirmed its alternative grant of Shell's motion for a new trial. Since a detailed recitation of the facts is found in Gates I, we only reiterate those facts that bear significantly on the present appeal.
 
 
 2
 In 1982, Shell hired Total Services, Inc. ("TSI") to install piping on its platform that was under construction on the Outer Continental Shelf ("OCS") off the Louisiana coast. Gates, a TSI pipefitter, injured his back when he and Louis Erwin, a Shell employee, tried to lift and move a valve assembly. Gates sued Shell under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. 1331-1356, claiming that Erwin caused his injuries by negligently ordering him to pick up the valve assembly.
 
 
 3
 Substantially the same evidence was presented at both the first and second trial. Gates's account of the accident is as follows:
 
 
 4
 [Erwin] came up to me and asked if I needed any help with this valve, and I told him no, that I was waiting. He just turned around and started walking away, and he come back for me and then he told me, "Come on, me and you can lift this valve." ... I grabbed a hold of it and he grabbed it [and as we lifted, I hurt my back].
 
 
 5
 There was testimony from a TSI employee that "Shell people working on the platform could tell any contractor or anybody else that was working on there what to do." Erwin testified that he was only trying to assist Gates because it appeared that he was trying to move the valve by himself.
 
 
 6
 At the conclusion of the second trial the jury found Shell negligent and Gates contributorily negligent. On Shell's motion, the trial court disallowed prejudgment interest on the future damages awarded. Gates appeals.
 
 
 7
 At the conclusion of Gates' case and its own, Shell's motions for a directed verdict were denied. After the verdict, Shell moved for JNOV or, alternatively, for a new trial. These motions were likewise denied. Shell cross-appeals.
 
 II. Directed Verdict, J.N.O.V, and New Trial
 
 8
 A directed verdict or JNOV should only be granted when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc ).
 
 
 9
 Shell argues that Erwin's conversation with Gates immediately prior to Gates' accident is insufficient to support a finding of negligence. In Gates I, this Court stated:
 
 
 10
 Upon review of all the evidence, we find that a reasonable jury, viewing the evidence most favorably to Gates, could have found that Shell was negligent and that its negligence proximately caused Gates' injury.
 
 
 11
 Specifically, the jury could have believed that Erwin ordered Gates to lift the valve, that Gates reasonably believed that he had to obey Erwin's order, and that Erwin should have known that the valve was too heavy for the two of them to lift safely.
 
 
 12
 Id. at 1512.
 
 
 13
 Our decision in Gates I that Erwin's conversation with Gates was sufficient to create a jury question "establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case at both the trial and appellate levels unless the evidence at a subsequent trial was substantially different, the controlling authority has since made a contrary decision of law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." Schexnider v. McDermott Intern. Inc., 868 F.2d 717, 718-19 (5th Cir.1989) (citing White v. Murtha, 377 F.2d 428, 431-32 (5th Cir.1967)); see also Williams v. City of New Orleans, 763 F.2d 667, 669 (5th Cir.1985).
 
 
 14
 The evidence adduced at the second trial concerning Erwin's "order" was substantially the same as the evidence we found sufficient to create a jury issue in Gates I, the controlling law has not changed, and no manifest injustice would result by rejecting Shell's appeal. We therefore affirm the trial court's denial of Shell's directed verdict and JNOV motions.
 
 
 15
 We also affirm the trial court's denial of Shell's motion for a new trial. The trial court's decision on a new trial motion for lack of evidentiary support is subject to review only for an abuse of discretion, Spurlin v. General Motors Corp., 528 F.2d 612, 620 (5th Cir.1976), and the trial court may not grant a new trial unless the verdict is "against the great weight of the evidence." See generally 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2806 (1973). In support of its argument, Shell contends that evidence of TSI's negligence was ignored by the jury. As factfinder, the jury is entitled to disbelieve this evidence. Here, we find that the trial court did not abuse its discretion. The same evidence that supports the trial court's denial of Shell's motions for a directed verdict and JNOV support the denial of Shell's motion for a new trial.
 
 III. Jury Instructions
 
 16
 The trial court charged the jury as follows:
 
 
 17
 The plaintiff asserts a claim for damages against the defendant Shell Offshore ... for negligence ... in its capacity as a platform owner. Specifically, the plaintiff contends that the defendant's conduct was negligent in that the defendant failed to exercise ordinary care under the circumstances to furnish the plaintiff with a reasonably safe place in which to work. The plaintiff claims that the defendant was negligent in one or more of the following particulars. One, that the defendant was negligent in improperly ordering the plaintiff to lift the valve assembly and two, that having ordered the plaintiff to lift the valve, defendant was negligent in failing to provide reasonable assistance to plaintiff to lift the valve assembly. The word order means any instruction or direction that under all the circumstances a prudent man should reasonably foresee that a reasonable person would comply with. An order does not have to be in writing or take any particular form.
 
 
 18
 First, Shell complains that the trial court erred by charging that Shell could be found negligent for "fail[ing] to exercise ordinary care under the circumstances to furnish the plaintiff with a reasonably safe place to work....." Even if we accept, arguendo, the validity of Shell's challenge, we must consider "the charge as a whole to determine whether the jury was misled and whether it understood the issues presented." Timm v. Upjohn Co., 624 F.2d 536, 539 (5th Cir.1980) (citation omitted), cert. denied, 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981). Here, immediately following the objected to instruction, the jury was told that Gates' negligence action is based on the theory that an improper order was given and that having given the order Shell then had a duty to provide assistance to Gates. Taken as a whole, the instruction was not misleading.
 
 
 19
 Shell also complains that the district court's instruction defining "order" constituted reversible error. The trial court has broad discretion to compose the instructions to the jury, as long as they are fundamentally accurate and not misleading. See Smith v. Borg-Warner, 626 F.2d 384, 386-87 (5th Cir.1980); Scheib v. Williams-McWilliams Co., Inc., 628 F.2d 509, 511 (5th Cir.1980). We do not find the definition of order misleading. We think that the definition used by the trial court conveys the idea that an order is an authoritative communication by which the person addressed is directed to do something, and sufficiently conveys the imperative nature of a communication that would constitute an order. See Webster's Third New International Dictionary 1588 (1981).
 
 IV. Damage Award
 
 20
 Shell contends that the award of $180,000 for past lost wages and $435,000 for future lost wages is excessive and not supported by the evidence. Its motion for a new trial on the issue of damages, and alternatively, remittitur, were denied by the trial court.
 
 
 21
 In reviewing a damage award, this Court is limited to determining whether the trier of fact abused its discretion. Bartholomew v. CNG Producing Co., 832 F.2d 326, 331 (5th Cir.1987). Damage awards will only be overturned in exceptional cases where such awards are so gross as to be contrary to right reason. Thezan v. Maritime Overseas Corp., 708 F.2d 175, 182 (5th Cir.1983) (citation omitted), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).
 
 
 22
 At trial, Gates' economic expert arrived at an earnings base of $43,717.95 per year by annualizing Gates earnings for the first three months of 1982, the year the accident occurred. Using this figure, and guided by Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir.1983), he determined Gates' past wage loss to be $209,267 and future wage loss to be $589,559. Although it did not present any economic evidence at trial, Shell now contends that the economist's calculations are speculative because he ignored Gates' earnings history prior to 1982 and did not take into account the downturn in the oil industry or Gates' ability to do sedentary work. Based on its own calculations, Shell urges that the maximum allowable award for past and future wage loss is $119,010 and $261,149, respectively. We do not agree. The jury award is supported by the economist's testimony and is not an abuse of discretion.
 
 V. Prejudgment Interest
 
 23
 Relying on Martin v. Walk, Haydel & Associates, Inc., 794 F.2d 209, 212 (5th Cir.1986) (prejudgment interest on future damages not allowed in admiralty), the trial court granted Shell's post-trial motion disallowing prejudgment interest on the future damage award.
 
 
 24
 The OCSLA, 43 U.S.C. section 1333(a)(2)(A) provides:
 
 
 25
 To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations ... the ... laws of each adjacent State ... are declared to be the laws of the United States.
 
 
 26
 There being no applicable federal statute or regulation, this Court has in OCSLA cases repeatedly allowed prejudgment interest on awards in accordance with LSA-R.S. 13:4203, which provides that "[l]egal interest shall attach from date of judicial demand on all judgments, sounding in damages, 'ex delicto,' which may be rendered by any of the courts."[1] We have not, however, squarely addressed the issue of whether prejudgment interest is allowed for future damages, although we have affirmed awards of prejudgment interest on judgments that included future damages. Bartholomew v. CNG Producing Co., 832 F.2d at 330-31; Haas v. Atlantic Richfield, 799 F.2d 1011, 1017-18 (5th Cir.1986). Likewise, the Louisiana Supreme Court has affirmed an award of prejudgment interest on a judgment that included future damages. Burton v. Foret, 498 So.2d 706 (La.1986). Louisiana appellate courts have uniformly held that prejudgment interest is awardable on future damages when applying LSA-R.S. 13:4203. See, e.g., Tastet v. Joyce, 531 So.2d 520, 523 (La.App. 5th Cir.1988); Lewis v. Macke Bldg. Services, Inc., 524 So.2d 16 (La.App. 5th Cir.), cert. denied, 532 So.2d 131 (La.1988); Schackai v. Tenneco Oil Co., 436 So.2d 729, 735 (La.App. 4th Cir.), cert. denied, 440 So.2d 759 (La.1983); Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, 467 (La.App. 1st Cir.1987); see also In Re Air Crash Disaster Near New Orleans, La., 767 F.2d 1151, 1159 (5th Cir.1985) (diversity case applying Louisiana law).
 
 
 27
 In the face of our own prior decisions under the OCSLA allowing prejudgment interest on future damages, as well as unanimous Louisiana authority interpreting LSA-R.S. 13:4203 as allowing prejudgment interest on future damages, we find that prejudgment interest should have been awarded on Gates' entire award.
 
 
 28
 For the above reasons, we affirm the judgment below with the exception of the denial of prejudgment interest on future damages. We reverse and remand on that issue.
 
 
 29
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 When applying the Louisiana law as "surrogate federal law" under the OCSLA, we have recognized that we may have "more discretion and broader authority in [our] evaluation, analysis, and application of state law to a given fact situation than an Erie court." Knapp v. Chevron USA, Inc., 781 F.2d 1123, 1129 (5th Cir.1986)